UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KYLE PEREZ and MARLEY WEST,

Plaintiffs,

v.

BENJAMIN BURNS, an individual; JACOB OWENS, individually and in his official capacity; BRISTOL GEORGE, PLLC, an Idaho company; KOOTENAI COUNTY SHERIFF'S OFFICE; and DEPUTY WALLACE, individually and in his official capacity,

Defendants.

Case No. 2:25-cv-00656-AKB

**MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS**

Before the Court is Plaintiffs Kyle Perez and Marley West's Motion for Reconsideration (Dkt. 9); Defendant Bejamin Burns's Motion to Quash Service of Process (Dkt. 10); Defendants Jacob Owens and Bristol George, PLLC's Motion to Dismiss Complaint (Dkt. 11); Defendants Kootenai County Sheriff's Office (County) and Deputy Gerald Wallace's Motion to Dismiss (Dkt. 14); and Plaintiffs' Motions to Expedite (Dkt. 32; Dkt. 33). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the record. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

## I. BACKGROUND

Plaintiffs previously resided at 2067 West Alsea Avenue, Post Falls, Idaho (the residence) (Dkt. 1 at 27). They allege that Defendant Benjamin Burns was their landlord (*id.* at 1, ¶ 2). Further, Plaintiffs allege "Perez purchased the [residence] through Quamish Drive LLC from [Burns] via seller financing with a 3-year balloon note due in 2024"; Perez did not make the balloon payment; and Burns foreclosed on the residence in May 2025 (*id.* at 3–4, ¶¶ 1–4).

In September 2025, Burns brought an unlawful detainer action to obtain possession of the residence (*id.* at 4, ¶ 5). Defendant Jacob Owens, who is an attorney associated with Defendant Bristol George, PLLC, represented Burns in the action (*id.* at 1, ¶¶ 3–4). Plaintiffs, however, were not party to that action; rather, Burns asserted the action against "WH Recovery Post Falls, Inc." (WH Recovery) (*id.* at 4, ¶ 9).

On October 6, 2025, the state court entered judgment against WH Recovery in the unlawful detainer action. *Burns v. WH Recovery Post Falls Inc.*, No. CV28-25-3582 (1st Jud. Dist. Ct. Idaho Oct. 6, 2025) (Judgment at 2–3).[1] That judgment provides that if WH Recovery "and its employees, agents, guests, customers, and *all other parties residing* or located at [the residence] do not vacate the premises . . . within seven days of the date of this Judgment, a writ of restitution and execution shall issue directing the Kootenai County Sherriff to evict said parties from said premises." *Id.* at 2 (emphasis added). On the same day the state court entered the judgment—

1 The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of those portions of the court filings in the Idaho iCourt Portal in *Burns v. WH Recovery Post Falls Inc.*, No. CV28-25-3582, First Judicial District Court (filed May 19, 2025), to which the Court refers in this decision. *See* Fed. R. Evid. 201(b) (providing court may judicially notice fact not subject to reasonable dispute).

October 6[2]—West contacted the state court and was informed that the court had entered a judgment and that the matter was closed (Dkt. 1 at 4, ¶ 18).

Nevertheless, West filed a motion to intervene in the unlawful detainer action on October 14, 2025 (*id.*). Then, on October 20, the state court issued a writ of execution, and on October 23, Defendant Deputy Wallace evicted Plaintiffs from the residence and removed their personal belongings (*id.* at 6–7, ¶¶ 20, 24, 30, 41, Ex. A). On October 27, West filed a motion in state court for a temporary stay of the writ of execution; that same day, the court granted the motion, stayed the writ as to West, and scheduled a hearing (*id.* at 8–9, ¶¶ 44–45; *id.* at 37).

On November 7, 2025, the state court held the hearing on West's motion to intervene, granted the motion, and heard argument from West and Owens. *Burns*, No. CV28-25-3582 (State Court Transcript of Nov. 7 Hearing). At the hearing, Owens confirmed that West was an agent of WH Recovery (*id.* at 3). After the court considered the parties' arguments, it declined to reconsider its unlawful detainer judgment and found that West had received adequate notice of the unlawful detainer action, including the October 6 judgment, because notice was provided to the property and its occupants and because West resided at the residence and had access to its mailbox (Dkt. 1 at ¶ 54; *id.* at 42). Additionally, the court noted West had actual knowledge of the action because West had frequently contacted the state court during the action's pendency (*id.* at ¶ 54; *id.* at 42).

Following the hearing, West emailed Burns's attorney, Owens, about retrieving her property (*id.* at 9, ¶ 57). Owens responded by letter dated November 11, noting Burns's rights under Idaho Code § 6-316(2) to dispose of Plaintiffs' property but offering to "restore WH Recovery's property" if Plaintiffs waived any claims "arising out of the repossession of the

---

[2] Plaintiffs' allegations often refer to proceedings in the unlawful detainer action occurring in 2024. The reference to 2024, however, appears to be a typographical error. The Court assumes Plaintiffs intended to allege dates in 2025.

premise and any leasehold or other interests [asserted] in the property" (Dkt. 1 at 48). That same day, Plaintiffs rejected Burns's offer (*id.* at 51–52), and the next day, Burns withdrew his offer to preserve and return Plaintiffs' property (*id.* at 54).

Several days later, on November 17, 2025, Plaintiffs filed this action against Burns, Owens, Bristol George, the County, and Deputy Wallace (Dkt. 1). Plaintiffs moved for a temporary restraining order enjoining Burns from disposing of their property, which this Court denied (Dkt. 7). Plaintiffs assert claims under 42 U.S.C. § 1983 and state law claims for conversion, negligence/breach of bailment, intentional infliction of emotional distress (IIED), and trespass to chattels (Dkt. 1 ¶¶ 68–103).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a party can move to dismiss a complaint due to a plaintiff's "failure to state a claim upon which relief may be granted." A Rule 12(b)(6) motion attacks a complaint's legal sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addressing a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Rule 8(a)(2) requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of plaintiff's claim and the grounds on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint "does not need detailed factual allegations," it requires "more than labels and conclusions." "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a Rule 12(b)(6) motion, a claim requires a complaint to have enough factual basis which, if true, states a plausible claim for relief. *Twombly*, 550 U.S. at 555.

A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion.[3] *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

In evaluating a motion challenging a pro se plaintiff's pleading, the district court liberally construes those pleadings. *United States v. Qazi*, 975 F.3d 989, 992-93 (9th Cir. 2020) (ruling courts apply less stringent standard to pro se plaintiff's inartful filings than to lawyers' formal pleadings). A pro se plaintiff's complaint need not be as specific as a complaint filed by counsel. *Id*. Liberal construction, however, should only be afforded to "a plaintiff's factual allegations," *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

---

[3] Both Plaintiffs submit declarations in support of their opposition to Owens and Bristol George's motion to dismiss (Dkt. 16 at 9-12). The Court declines to consider these declarations for purposes of resolving that Rule 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 155 n.19 (9th Cir. 1989) (noting court may not consider materials beyond complaint in ruling on Rule 12(b)(6) motion).

## III. ANALYSIS

### A. Owen and Bristol George's Motion to Dismiss

Owens and Bristol George move under Rule 12(b)(6) to dismiss Plaintiffs' complaint against them "in its entirety" (Dkt. 11 at 1).

#### 1. Section 1983 claims

Owens and Bristol George challenge Plaintiffs' § 1983 claims. They argue that § 1983 only provides a remedy for deprivation of constitutional rights under the color of state action and that neither Owens nor Bristol George are state actors who "took any action that could be fairly attributed to the State of Idaho" (Dkt. 11 at 4).

"The Fourth Amendment applies to searches and seizures in the civil context." *Ballinger v. City of Oakland*, 24 F4th 1287, 1300 (9th Cir. 2022). Under § 1983, a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). "Similarly, a violation of plaintiff's constitutional rights cognizable under the Fourteenth Amendment can occur only by way of state action." *Id.* "[T]he color of law and state action inquiries are the same." *Id.*

"Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989). A plaintiff may show a private party's state action under "[t]he close nexus and joint action tests." *Rawson*, 975 F.3d at 748. These tests "may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself or where the State has so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* (citation modified). "[T]he inquiry is always whether the

defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.*

A plaintiff's conclusory allegations that a lawyer was conspiring with state officials to deprive him of his constitutional rights are insufficient to establish state action. *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003). To allege a conspiracy between the state and private parties under § 1983, a plaintiff must allege an agreement or meeting of the minds to violate the plaintiff's constitutional rights. *United Steelworkers*, 865 F.2d at 1540-41.

Here, the Court finds Plaintiffs' allegations are either nonexistent or too conclusory to state a viable claim for relief under § 1983 against either Owens or Bristol George. Plaintiffs do not clearly identify against whom they have alleged their § 1983 claims for violations of due process and unreasonable search and seizures, which are Counts 1 and 2 respectively (*see* Dkt. 1 at ¶¶ 72-81). "[I]n the context of a multiparty, multiclaim complaint each claim should be stated as succinctly and plainly as possible. . . ." 5 Fed. Prac. & Proc. Civ. § 1217 (4th ed. 2024). Despite Plaintiffs' failure to clearly identify the defendants subject to each of their claims, the Court liberally construes Plaintiffs' allegations.

Count 1 purports to allege a procedural due process violation against Deputy Wallace. For example, it alleges that "Deputy Wallace, acting under color of state law, deprived Plaintiffs of property and possession of their residence without notice" (Dkt. 1 at ¶ 73). Count 1, however, neither mentions Owens nor Bristol George. Further, Plaintiffs' complaint does not generally allege any facts to support a claim that Owens or Bristol George acted jointly with a state actor to deprive Plaintiffs of their due process rights. Accordingly, the Court concludes Plaintiffs have not asserted a viable claim for due process violations against either Owens or Bristol George.

Similarly, Count 2 for unlawful seizure does not mention Bristol George. That claim is, again, primarily directed against Deputy Wallace (*id.* at ¶¶ 79-80). Count 2 does allege, however, that Owens had a "role in coordinating the removal" of Plaintiffs' personal property and that this conduct constitutes "joint action with state officials" (*id.* at ¶ 80). Plaintiffs also include in their general allegations that Owens was "personally involved in coordinating the removal, storage, and threatened destruction of Plaintiffs' property" *(id.* at ¶ 3).

The Court construes these allegations as an attempt to aver a § 1983 claim against Owens but concludes that the allegations are too conclusory to assert a viable claim. *See, e.g.*, *Twombly*, 550 U.S. at 555 (requiring more than mere labels and conclusions). For example, Plaintiffs do not allege any nexus between Owens and law enforcement; the nature of Owens' involvement in the seizure of Plaintiffs' personal property; or with whom Owens purportedly acted jointly or conspired to violate Plaintiffs' constitutional rights. Indeed, Plaintiffs' allegations attribute the seizure of their property solely to Deputy Wallace and the County (*see, e.g.*, Dkt. 1 at ¶ 71) ("Deputy Wallace and Kootenai County executed the writ against Plaintiffs. . . ."). Plaintiffs' conclusory allegations that Owens had a "role" and was somehow "involved" in the removal of their property are inadequate to state a plausible claim for relief against him.

Further, Plaintiffs' assertion that "Owens was directly involved in *post*-seizure communications" about Plaintiffs' property (Dkt. 16 at 4) (emphasis added), is inadequate to support a plausible claim. Post-seizure conduct does not establish joint action with the state giving rise to the alleged unlawful seizure. Moreover, Plaintiffs' allegations of Owens' post-seizure communications or lack thereof are communications between Owens and Plaintiffs—not conspiratorial communications with the state to violate Plaintiffs' constitutional rights.

Accordingly, the Court concludes that Plaintiffs have failed to state a plausible § 1983 claim for relief against either Owens or Bristol George.

**2. Litigation Privilege**

Owens and Bristol George argue that Idaho's litigation privilege shields them from liability arising out of their representation of Burns (Dkt. 11 at 5). Plaintiffs correctly note that the Ninth Circuit has ruled that a state law litigation privilege does not shield a defendant from § 1983 liability. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (ruling state immunity law does not govern § 1983 claims to provide immunity to private attorneys). Regardless, Idaho's litigation privilege may shield Owens and Bristol from liability for Plaintiffs' remaining state law claims, and Plaintiffs do not argue otherwise (*see* Dkt. 16 at 6) (arguing only that privilege does not bar federal constitutional claims).

The litigation privilege protects "an attorney acting within the law, in a legitimate effort to zealously advance the interests of his client." *Taylor v. McNichols*, 243 P.3d 642, 656 (Idaho 2010). Idaho law presumes that "an attorney who is acting or communicating in relation to his representation of a client is acting on behalf of that client and for that client's interests." *Id.* at 657. Generally, "where an attorney is sued by the current or former adversary of his client, as a result of actions or communications that the attorney has taken or made in the course of his representation of his client in the course of litigation, the action is presumed to be barred by the litigation privilege." *Id.* An exception applies "where the plaintiff pleads facts sufficient to show that the attorney has engaged in independent acts . . . outside the scope of his representation of his client's interests, or has acted solely for his own interests and not his clients."

Here, Owen and Bristol George rely exclusively on the litigation privilege to challenge Plaintiffs' state law claims,[4] arguing that all Plaintiffs' allegations against them "arise out of [Owens] representation" of Burns (Dkt. 11 at 5). Aside from Plaintiffs' conclusory allegation that Owens had a "role" and was "involved" in their property's seizure, Plaintiffs only other allegations regarding Owens are that he would not respond to West's communications on the day of the seizure (Dkt. 1 ¶¶ 37-39) and that he attempted to negotiate a return of Plaintiffs' property (*id.* ¶¶ 57–63). These allegations do not state facts showing that Owens was engaged in independent acts for his own interests. To the contrary, they assert facts showing Owens was acting in his capacity as Burns's lawyer. West contacted Owens because he was Burns's lawyer, and in that capacity, Owens attempted to negotiate a settlement with West. Accordingly, the litigation privilege protects Owens and Bristol George and bars Plaintiffs' state law claims against them.

### 3. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure governs whether to allow plaintiffs an opportunity to amend their claims. That rule states that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quotation omitted). "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Id.* This liberal amendment policy is even more important with respect to pro se plaintiffs, who generally lack legal training. *Id.*

Because of the liberal policy allowing pro se plaintiffs leave to amend, the Court will grant Plaintiffs the opportunity to amend their complaint against Owens and Bristol George. As

[4] Owens and Bristol George do not challenge Plaintiffs' allegations in support of their state law claims. Those allegations, however, are very sparse and conclusory.

discussed above, however, to assert a viable claim for relief against Owens or Bristol George, Plaintiffs must allege state action on their behalf or conduct beyond the scope of their representation of Burns and in their own personal interests. Otherwise, their amendment will be futile.

**B. Service of Process**

Burns moves under Rule 12(b)(5) to quash service of process on him and to require proper service, and Deputy Wallace and the County move under Rule 12(b)(5) to dismiss Plaintiffs' claims against them for insufficient service of process (Dkt. 10; Dkt. 14-1). To determine whether service of process was sufficient, courts look to the requirements of Rule 4 of the Federal Rules of Civil Procedure. Absolute fidelity to Rule 4 is not always required, however. "So long as a party receives sufficient notice of the complaint, Rule 4 is to be liberally construed to uphold service." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (quotation omitted); *see also Borzeka v. Heckler,* 739 F.2d 444, 447 (9th Cir. 1984) (noting considerations of actual notice, lack of prejudice to defendant, and justifiable excuse). A court, however, lacks personal jurisdiction over a defendant unless the plaintiff has served the defendant in accordance with Rule 4. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *amended*, 807 F.2d 1514 (9th Cir. 1987). "[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." *Id.*

The district court must grant an extension of time for service outside of the 90–day period under Rule 4(m) if "good cause" is shown. *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 n.2 (9th Cir. 2003). The Ninth Circuit has held, however, that a district court has broad discretion under Rule 4(m) to extend the time for service even without a showing of good cause. *United States v. 2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004); *see also Mann*, 324 F.3d at 1090 n.2. A district

court may, for instance, extend the time for service retroactively after the service period has expired. *2,164 Watches*, 366 F.3d at 772.

**1. Burns**

Plaintiffs purportedly served Burns by personally delivering the summons and complaint to Owens as Burns's attorney (Dkt. 6-1). Owens entered a "special appearance" on behalf of Burns to quash that service as insufficient and requests the Court order Plaintiffs to serve Burns properly (Dkt. 10 at 2). In support, Owens states he was not authorized to accept service on Burns's behalf (*id.*).

Relevant to Burns's motion is Rule 4(e)(2)(C). It provides that an individual may be served by delivering a copy of the summons and complaint "to an agent authorized by appointment" to accept service on the individual's behalf. Fed. R. Civ. P. 4(e)(2)(C). However, "the mere fact that a person acts as the defendant's agent for some purposes does not necessarily mean that the person has authority to receive the summons and complaint." 4A Fed. Prac. & Proc. Civ. § 1097 (4th ed.). Indeed, numerous courts have ruled that an attorney-client relationship is not sufficient evidence of authority to accept service. *Id.* at n.9.

Here, Plaintiffs could not simply assume that Owens was authorized to accept service for Burns in this case because Owens represented Burns in the state court unlawful detainer action. Because Owens was not authorized to accept service for Burns, the Court grants his motion to quash service.

Plaintiffs do not establish good cause for failing to properly serve Burns under Rule 4. Instead, they argue that their service on Owens for Burns has not prejudiced him and that Burns received actual notice of the action. The Court agrees that Burns has not shown prejudice or lack of notice. For these reasons and because Plaintiffs are proceeding pro se, the Court will

retroactively extend the period of service to allow Plaintiffs to properly serve Burns under Rule 4(e)(2).

**2. Deputy Wallace and the County**

Plaintiffs purportedly served Deputy Wallace by personally delivering the summons and complaint to the office of the County's civil deputy attorney (Dkt. 8). Relevant to Deputy Wallace's service is Rule 4(e)(2)(A) and (B). These subsections provide that to serve an individual, a plaintiff must deliver a copy of the summons and complaint to the individual personally or leave a copy at his "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A), (B); *see also* Idaho R. Civ. P. 4(d)(2) (same). Plaintiffs did not comply with this rule.

Similarly, Plaintiffs did not comply with Rule 4 for purposes of serving the County. Rule 4(j)(2) requires a plaintiff to serve a state-created government organization by delivering a copy of the summons and the complaint to its "chief executive officer." Fed. R. Civ. P. 4(j)(2)(A). Alternatively, a plaintiff may serve its "chief executive officer or the secretary or clerk thereof" under the state rule. Idaho R. Civ. P. 4(d)(4)(B); Fed. R. Civ. P. 4(j)(2)(B). Instead of serving one of these individuals, Plaintiffs purportedly served the County by delivering process to its civil deputy attorney's office (Dkt. 8-1).

In opposition to Deputy Wallace's and County's motion, Plaintiffs explain that the Sheriff's Office refused service and suggested that Plaintiffs contact the County's civil attorney and that the County Clerk's Office "advised" Plaintiffs to serve the County's civil deputy attorney's office (Dkt. 18 at 7-8). They argue that dismissal of their claims against Deputy Wallace and the County would be "disproportionate" to their service defect and request leave to cure that defect.

The Court declines to find that Plaintiffs' reliance on others advice about how to comply with the procedural rules establishes good cause. Nevertheless, as with Burns, the Court finds that Deputy Wallace and the County have not shown prejudice or lack of actual notice due to Plaintiffs' failure to comply with Rule 4. For these reasons and because Plaintiffs are proceeding pro se, the Court will deny the motion to dismiss Plaintiffs' claims against Deputy Wallace and the County and retroactively extend the period of service to allow Plaintiffs to properly serve Deputy Wallace under Rule 4(e)(2) and the County under Rule 4(j)(2).

**C. Plaintiffs' Motion for Reconsideration**

Plaintiffs move for reconsideration of the Court's Order denying their request for injunctive relief (Dkt. 9). Neither the Federal Rules of Civil Procedure nor the District of Idaho Local Civil Rules provide for a motion for reconsideration of an interlocutory order. Rather, the Court possesses the "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and emphasis omitted). Although courts have authority to reconsider prior orders, they "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)).

Plaintiffs argue that reconsideration is appropriate because "the Court's prior ruling was based on material factual misunderstandings" (Dkt. 9 at 2). The Court does not find good cause to modify its prior Order. In support of their motion, Plaintiffs simply reassert arguments that they raised in their original motion for injunctive relief, including arguing the facts related to the underlying unlawful detainer action (*see generally* Dkt. 9).

In denying Plaintiffs' motion for injunctive relief, the Court applied the correct standard and concluded Plaintiffs were not likely to succeed on the merits of their § 1983 claim against Deputy Wallace on which they relied for purposes of their motion. In support of its ruling, the Court noted that before the government can seize and destroy a person's property, it must provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333–37 (1976).

The Court found that Plaintiffs were unlikely to show they did not receive meaningful notice and an opportunity to be heard because the state court record indicated that the state court granted West's motion to intervene in the unlawful detainer action, held a hearing on the merits, and considered West's assertion that Plaintiffs did not have adequate notice of the action or that they had to evacuate the residence and remove their belongings. During that hearing, the state court found that Plaintiffs had proper and actual notice of the state court proceedings. Nothing Plaintiffs raise in their motion for reconsideration changes or undermines the Court's analysis. Accordingly, the Court denies Plaintiffs' motion for reconsideration.

**ORDER**

1. Plaintiffs Kyle Perez and Marley West's Motion for Reconsideration (Dkt. 9) is **DENIED**;

2. Defendant Benjamin Burns's Motion to Quash Service of Process (Dkt. 10) is **GRANTED**;

3. Defendants Jacob Owens and Bristol George, PLLC's Motion to Dismiss Complaint (Dkt. 11) is **GRANTED**. Plaintiffs' claims against Owens and Bristol George are **DISMISSED WITHOUT PREJUDICE**;

4. Defendants Kootenai County Sheriff's Office and Deputy Gerald Wallace's Motion to Dismiss (Dkt. 14) is **DENIED**; and

5. Plaintiffs' Motions to Expedite (Dkt. 32; Dkt. 33) are **DENIED** as moot.

6. The Court grants Plaintiffs leave to file an amended complaint against Owens and Bristol George to the extent Plaintiffs can allege state action by them to support a claim under 42 U.S.C. § 1983 and conduct beyond the scope of their representation of Burns. Further, the Court extends the date for Plaintiffs to properly serve Burns, Deputy Wallace, and Kootenai County under Rule 4. Plaintiffs must effect service of process and file any amended complaint against Owens and Bristol George **WITHIN THIRTY (30) DAYS** of the entry of this decision.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: September 23, 2026

Amanda K. Brailsford

Amanda K. Brailsford
U.S. District Court Judge